(91 South. 762)

No. 24055.

GREIG v. ALBERT HANSON LUMBER CO., Ltd.

(April 3, 1922.)

(Syllabus by Editorial Staff.)

1. Vendor and purchaser ⬤⟲231(13) — Sales; recording of probated will in conveyance records not required.

Code Prac. arts. 930 and 940, relative to the execution and recording of wills, when construed in connection with articles 924 and 942, relative to the same subject, article 1045 prescribing the records to be kept by clerks of probate courts, articles 775–777 relative to the records of clerks of the district courts, and Rev. St. 1870, §§ 465 and 474, do not require a probated will to be recorded in the conveyance records, and one purchasing land, the owner of which is dead, is bound to ascertain where the succession has been opened and to be governed by the dispositions shown by the records of the probate court.

2. Vendor and purchaser ⬤⟲231(13)—Sales; whether statute requires will to be deposited with parish records held immaterial.

Where plaintiff and defendant traced their titles to land in S. parish to a common author, and plaintiff acquired his through mesne conveyances under a will duly probated and recorded in the probate records of I. parish, while defendant relies on transfers emanating from the legitimated heirs of the common author, the records of S. parish do not affect the matter, in so far as the sources from which the parties acquired title are concerned, and it is unnecessary to determine whether Civ. Code, art. 2264, requiring notarial acts concerning immovable property to be deposited in the office of the parish recorder, applies to wills by public act.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Percy Saint, Judge.

Action by Frank Greig against the Albert Hanson Lumber Company, Limited. From a judgment for defendant, plaintiff appeals. Judgment annulled and reversed and case remanded.

F. E. Delahoussaye, of New Iberia, for appellant.

Emmet Alpha, of Franklin, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. Plaintiff brings this petitory action to recover a two-forty-eighths interest in certain lands, prays for a partition in kind or by licitation, as the case may warrant, and for judgment for the manufactured or stumpage value, as the facts may require, of certain timber alleged to have been removed from said lands. Plaintiff

claims to have acquired said interest from one Chris Capp, Jr., who inherited from his mother, Ernestine Labbe, and that the latter acquired the said interest by last will and testament from one Alexander M. Hayes.

To this petition defendant filed what was termed an "exception of want of registry," in which it was averred that the alleged will of Alexander M. Hayes had never been re-corded in the parish of St. Mary, where the property is situated; that it (defendant) ac-quired said property from the legitimated heirs or children of said Hayes, after having found, in a "Miscellaneous" Book in Iberia parish, formal and legal acts of legitimation by said Hayes of his said children; that it did not know that the said Hayes had ever attempted to make a will and bought said property from said legitimated heirs believ-ing them to be the exclusive owners thereof. Defendant prayed that its said exception be sustained and plaintiff's demands rejected at his costs.

The exception was tried upon the follow-ing statement of facts, to wit:

"That the last will and testament of Alexan-der Malachi Hayes, dated October 1, 1890, a copy of which is attached to the supplemental petition of the plaintiff, was probated, and re-corded in the parish of Iberia, on November 17, 1891, in Probate Book 13, page 57, of the records of that parish; but that said will is not recorded in the Conveyance Book of the par-ish of Iberia, nor is it recorded in the Convey-ance Book of the parish of St. Mary.

"2. That the act of legitimation, executed by Alexander Malachi Hayes, in favor of his four children, Louisa Hayes, Mary Ozea Hayes, Alexander Malachi Hayes, Jr., and Pelagie Hayes, was recorded in the parish of Iberia, on the 1st day of October, 1890, in Miscella-eous Book No. 2, page 566, and is not record-ed in the Conveyance Book of the parish of Iberia, and was not recorded in the Conveyance Book of the parish of St. Mary until Febru-ary 17, 1911, being now of record in Book 3–C of Conveyance, page 156.

"3. That the Albert Hanson Lumber Com-pany, Ltd., recorded a title from Alexander Malachi Hayes, Jr., Louisa Hayes, and Mary Ozea Hayes, purporting to transfer certain in-terest in the property described in plaintiff's petition, and that said company recorded a title from Nina Ghruntman and Williams Dommert, purporting to transfer certain other interests in the property described in plaintiff's peti-tion, of record in Conveyance Book 3–C, of the records of the parish of St. Mary, on February 16, 1911.

"4. That Pete Cherry acquired from the guardian of Nora, Elma, and Dora Dommert, on August 4, 1911, what purports to be certain interests in the property described in plain-tiff's petition, of record in Conveyance Book YY, page 570, which the Albert Hanson Lumber Company, Limited, acquired from him on the same 4th day of August, 1911, by title of rec-ord in the same Conveyance Book, page 571.

"5. That at the various times of purchase by the defendant company, of the entire property described in plaintiff's petition, the same stood of record in the parish of St. Mary in the name of Alexander Malachi Hayes and others who had inherited from collateral and ascending heirs; but it is, admitted by the defendant that there was not title of record in the parish of St. Mary in the name of Alexander Malachi Hayes, Jr., or Louisa Hayes, or Mary Ozea Hayes, or Nina Ghruntman, or Nora or Dora Dommert."

There was judgment below sustaining the exception and dismissing plaintiff's suit, and he has appealed.

### Opinion.

[1] Defendant bases its contention that it has acquired the full title to the property from the heirs of Hayes, notwithstanding he left a will bequeathing a part of his entire estate to plaintiff's ancestor in title, upon the following provisions of the Revised Civil Code and Code of Practice:

R. C. C. art. 2264: "No notarial act con-cerning immovable property shall have any ef-fect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the par-ish where such immovable property is situat-ed."

C. P. art. 930: "If the will be made by public act, it shall be sufficient for the petitioner to annex a copy of it in due form to his petition, and to pray for the execution and recording of it."

C. P. art. 940: "After this proof the judge shall read the will in an audible and distinct

voice, to the end that its provisions may be heard by the witnesses and all other persons present, and if it appear to be in regular form the execution of it shall be ordered, and it shall be recorded."

In his reasons for judgment, the lower judge said:

"The defendant lumber company acquired this property upon the face and faith of the records of St. Mary parish; the St. Mary records showed that the property belonged to Alexander Malachi Hayes, or his heirs; that he, or his heirs were the apparent owner or owners. It not being necessary for title by descent to be registered, and defendant finding that Hayes had died, and that he had left legitimated children and heirs, proceeded under these conditions to buy the property.

"While it is true that a will transfers title of property bequeathed by it, strangers to the blood who inherit under the will become heirs and owners of what is inherited, after the death of the party making the will, and unless their titles to real estate acquired under the will are recorded in the parish where the real estate is situated, an innocent party who buys from heirs of the blood, who appear to be the only owners by the records, and acquires in good faith, acquires a good and valid title."

In oral argument, counsel for defendant did not appear willing to go as far as did the trial court, which, in effect, held that no will could have effect as against third persons who acquire from the presumptive heirs, unless such will be recorded in the conveyance records of the parish where the property is situated. He preferred to rest the case upon the article 2264 of the Civil Code, requiring all notarial acts affecting real estate to be so recorded.

When one wishes to buy real property which stands upon the conveyance record of the parish where it is situated in the name of a person known to be dead. it is incumbent upon the one so desiring to purchase to find the lawful heirs of such deceased person. The first inquiry to be made is: Where did the party die? When this is established, then the next and natural inquiry is as to whether his succession has been formally opened in the parish of his death; and the place to seek this information is in the probate records of that parish. This the defendant did not do, although it or its attorney was informed that Hayes had died in Iberia parish. If they had taken the trouble to examine those probate records, they would have found the will of Alexander Malachi Hayes duly probated and recorded, by which he had left the interest now claimed by plaintiff to the said Ernestine Labbe. This was not done. When the act of legitimation of Hayes' children was discovered in the "Miscellaneous" Book (for the keeping of which record we find no provision in the law) no further investigation was made, and defendant sought to acquire the whole interest from them.

We shall discuss first the provisions of the Code of Practice, relied upon as requiring the will to be recorded. The articles 930 and 940 are found under title 3 of the Code of Practice, dealing with "Courts of Probate and Their Jurisdiction," in section 1, dealing with the "Opening and Proving of Wills." In addition to those articles, we find that article 924, in enumerating the "exclusive powers" of courts of probate (section 1) provides that they have the power—

"To open and receive the proof of last wills and testaments, and to order the execution and recording them."

And article 941 reads:

"The judge shall also ordain [after ordering its execution and recording] that the original of the will thus proved shall be deposited in his office, after being signed ne varietur, by him, at the beginning and end of each page."

Article 942, which enumerates what the procès verbal of the court covering the probate of a will shall contain, in section 4, provides:

"The order for executing and recording the will and for depositing it, after having signed it ne varietur, at the beginning and end of each page

"This procès verbal shall be dated and signed by the judge or clerk, and shall remain annexed to the record as a part of it."

Article 1045 prescribes the records which clerks of probate courts shall keep, to wit:

"The clerks of the courts of probate, in parishes where there are no registers, and the register of wills for the parish of Orleans, shall keep two records in the same form as is directed for clerks of the district courts of the state."

The record books which the clerks of district courts were required to keep were covered by the following articles of the Code of Practice and sections of the Revised Statutes of 1870, to wit:

"Article 775. Clerks shall keep at least two record books.

"Art. 776. In one they shall set down in order the titles of all causes depending before the court, mentioning the date of the filing of the petitions or answers, and the names of the counsel employed by the parties.

"Art. 777. In the other they shall set down all the orders and judgments rendered, as well as the motions made by the parties or their counsel.

R. S. § 465: "The clerks shall record all proceedings in successions, and they shall receive therefor such fees as may be allowed by law.

R. S. § 474: "It shall be the duty of the clerks, within six months after the rendition of a final judgment, in all causes to record, in a well-bound book, the petition, answer, orders of court and interlocutory judgments, together with the final judgment * * * rendered thereon."

It will thus be seen that the clerk of the probate court, when the Code of Practice was adopted in 1870 (article 1045) was required to keep only two record books, i. e., a docket (article 776) and a minute book (article 777), as was provided for clerks of the district court; but the clerks of district courts (R. S. of 1870, § 464) were required to "record all proceedings in successions." So that it was to the latter officer that the order for recording proceedings covering the probating of wills (C. P. art. 940) had to be directed. The only other record which the clerk of the ·district court (other than docket and minute records) was required to keep, under the Code of Practice and Revised Statutes of 1870, adopted at the same session of Legislature, was that provided by section 474 of the said statutes.

At that time (1870) the duties of recording mortgages, conveyances, and other acts affecting real property were imposed upon an entirely different officer in each parish (other than Orleans), styled "the recorder." Section 3065 et seq., R. S. While this officer (recorder) was empowered (section 3066) to "receive wills," that is to write or confect them in the capacity of notary, nowhere among the many other acts which he is required to record (including births and deaths) do we find included wills which have been probated or other succession proceedings.

From this it would seem to follow that articles 930 and 940 of the Code of Practice, relied upon by defendant, not only do not sustain its contention that the will, after being probated, should be recorded in the conveyance records, but, taking the provisions of law as a whole, we think that an entirely separate system and records were provided and intended as a repository and notice to all persons dealing with succession property, consisting of the records of the probate court and the book required to be kept by the clerk of the district court by section 474 of the Revised Statutes.

Being informed of the death of the record owner of real property, as the defendant was in this case, it was its duty to ascertain where his succession had been opened, and to be governed by the dispositions which the records of the probate court showed had been made of his property. Of course, prior to the passage of the present Inheritance Tax Law, which prohibits an heir from taking possession or disposing of property of a deceased person until the tax has been determined, one could, at his own risk, locate the presumptive heirs and acquire title from

them; but in such cases, they had necessarily to rely upon information gained outside of any official record, and in such circumstances, would necessarily not be relying upon any record, in the sense that innocent third persons are entitled to do under the laws governing real property.

[2] For the reasons above given, we think it unnecessary to determine whether article 2264 of the Civil Code applies to wills by public act. Both plaintiff and defendant trace their titles back to a common author, to wit: Alexander M. Hayes. The former shows that he acquired through mesne conveyances under the will duly probated and recorded, which left the decedent's estate to Ernestine Labbe and the legitimated heirs of the testator in certain undivided proportions, while the defendant relied alone upon the transfers emanating from those legitimated heirs. Therefore, the records of St. Mary parish did not affect the matter, in so far as the sources from which the parties acquired title were concerned.

It is therefore ordered and decreed that the judgment of the lower court be, and the same is, annulled and reversed, and this case is remanded to the lower court, to be proceeded with according to law and the views herein expressed, appellee to pay costs of this appeal, all other costs to await final judgment.